IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY KLEIN and<br>BRETT BIRDWELL, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | No. _____ |
| NATIONAL RAILROAD PASSENGER<br>CORPORATION and<br>NORFOLK SOUTHERN<br>CORPORATION, | : | |
| | : | |
| Defendants. | : | |
| | : | JURY TRIAL DEMANDED |

**COMPLAINT-CIVIL ACTION**
**(PERSONAL INJURY)**

**Jurisdiction and Venue**

1. This Court has jurisdiction of this matter under 28 U.S.C. Section 1332 in that there is complete diversity of citizenship between Plaintiffs and Defendants and the amount in controversy exceeds $150,000 exclusive of interest and costs.

2. Venue is proper in this district pursuant to 28 U.S.C. 1391 (a) and (c) in that Defendants are corporations licensed to do business in this district and a substantial part of the events giving rise to Plaintiffs' claims occurred in this district.

## Parties

3. Plaintiff Jeffrey Klein is an adult individual currently residing at 1044 Penn Estates, East Stroudsburg, Pennsylvania 18301.

4. Plaintiff Brett Birdwell is an adult individual currently residing at 606 Rosemont Avenue, Stroudsburg, Pennsylvania 18360.

5. Defendant National Railroad Passenger Corporation (hereinafter "Amtrak") is a corporation with its principal office and place of business in the District of Columbia.

6. Defendant Norfolk Southern Corporation (hereinafter "NSC") is a corporation with its principal office and place of business in Norfolk, Virginia.

## Operative Facts

### The Danger of Electrical Arcing

7. Defendant Amtrak owns electrified railroad lines in the eastern United States.

8. Defendant NSC owns trains that run along Amtrak's electrified lines. Trains that run on electrified railroad lines are powered by high voltage, direct current electricity carried in wires that run above the trains.

9. These overhead wires are known in the railroad industry as "catenary" wires.

10. Catenary wires present a serious risk of harm, through electrocution, to anyone who touches them. This risk is obvious and known.

11. Catenary wires also present serious risk of electrocution, however, even to persons who do not touch them.

12. Catenary wires present the latter risk due to the phenomenon known as "arcing."

13. Arcing is the leaping of electricity from wire to person without actual contact between wire and person.

14. Arcing can cover a distance of as much as three feet.

15. Arcing is substantially more probable with direct current electricity, which catenary wires use, than with alternating electrical current.

16. The injuries that arcing causes are horrific, and include severe and extensive burns and death.

17. Unlike the danger of touching a catenary or other high voltage wire, which danger is obvious and generally known, the phenomenon and danger of arcing are generally unknown, even within the railroad industry.

18. Railroad companies have to warn their employees about the danger of arcing, because the employees themselves, even those with experience, often do not know it.

19. Railroad companies consider the danger of arcing so great that they subject any employee to discipline who comes within three feet even of "de-energized" direct current catenary wires, i.e., catenary wires that supposedly have no current running through them.

20. Outside the railroad industry, with the possible exception of medical personnel, emergency rescue teams and specialists in train electricity, the danger of arcing from catenary wires is unknown.

21. Defendants and the railroad industry know this: they know that the general public has no appreciation of the danger of electrical arcing from catenary wires.

22. Defendants also know that members of the general public are frequently exposed to and thus endangered by the risk of arcing from catenary wires.

23. Defendants know that those in the railroad industry frequently park railcars under catenary wires.

24. These railcars have ladders that reach to the top of the cars.

25. These ladders, if climbed, put a person within the arcing distance of catenary wires.

26. These railcars are parked in places readily accessible to members of the general public, including minors.

27. Defendants know that minors are particularly attracted to railroad rights of way and to railroad cars.

28. Defendants know that members of the general public, including and especially minors, frequently climb the ladders of railcars that are left in readily accessible places, including railcars that are left under catenary wires.

29.     Defendants know that those who climb railcars parked under catenary wires have no idea that they can be killed or maimed by electricity from those wires, because of arcing, even if they are careful not to touch those wires and keep clear of those wires.

30.     Defendants know that as a result of this total lack of awareness, frequent deaths and injuries occur to members of the general public, especially children.

31.     Defendants have known for years that minors are killed, maimed and burned each year due to electrical arcing of catenary wires; indeed, defendants have know for years that minors are the vast majority of the victims of catenary wire shock and electrocution.

32.     Defendants know the severity of the injuries that catenary wires cause; Defendants know that these injuries include third degree burns over substantial portions of the human body; horribly disfiguring scarring; amputations; months in burn units; terribly painful excisions and treatments on a daily basis; and lifetime emotional injury beyond repair.

33.     Defendants know that they could easily warn about the danger of catenary wire arcing, through colored signs with words and drawings, which signs would be placed on railcars beside their ladders and on catenary poles and wires.

34.     Defendants know that such signs could readily alert the public, including children, to the dangers of arcing.

35. The United States Government has urged Defendants and their industry to provide such warnings for years, but they have failed to do so.

36. The United States Department of Transportation has recommended that caution signs, including both a warning legend and symbolic representation ("a stick figure on top of a railcar below the catenary with a lightning bolt between the wire and the child") be placed at or near catenary wires, to alert people, especially minors, to the risk of electrical shock.

37. The Federal Railroad Administration ("FRA"), in a 1986 report:

   a. said that improved signing can improve railroad safety;

   b. noted in particular the danger that catenary wires present to non-employees of the railroad;

   c. acknowledged that minors are especially inquisitive about the railroad and inclined to enter the tracks;

   d. said that the "electrical current [of catenaries] is so great that shocks can result without actual contact with the wire;" and

   e. said that "warning signs along electrified railroads can reduce accidents" and that the "signs should provide both symbolic representation (such as a lightning bolt) and the warning legend."

38. Placing such a simple color sign on a railcar would be inexpensive and efficient, and would in no way interfere with the normal and intended use of that railcar or with Defendants' businesses and operations.

39.     Given the magnitude of the danger involved, the ready ease of protecting against it through a simple warning sign of the type described above, and the repeated and reasonable requests that they post such signs, there is no excuse for Defendants not to post such signs.

40.     Defendants, however, have chosen not to post such signs or to do anything to warn the general public about the danger of catenary arcing, and have chosen instead simply to allow that danger, and its attendant carnage and tragedy, to continue unabated.  Plaintiffs are victims of that choice.

## The Accident in Suit

41.     On August 10, 2002, Jeffrey Klein and Brett Birdwell, both minors, were severely injured in an electrical arcing accident.

42.     When the accident occurred, Jeffrey and Brett were standing on top of a railcar for which NSC was the carrier, and which was powered by Amtrak lines and parked on Amtrak property.

43.     The railcar was parked for the convenience of Defendant NSC on tracks bordering the 700 block of New Holland Avenue in Lancaster, Pennsylvania.

44.     The tracks were in an area frequented by the public, adjacent to the parking lot of a recently converted convenience store, in a mixed residential and commercial neighborhood well known to be frequented by minors from nearby homes.

45.     Jeffrey and Brett had climbed one of the ladders of the railcar to see what the view looked like from there.

46. Neither Jeffrey nor Brett was aware of the danger of electrical arcing.

47. There were no signs warning of the danger of electrical arcing on the railcar, the catenary poles and wires or anywhere near the railcar, poles or wires.

48. Jeffrey and Brett were walking on the top of the railcar when 14,000 volts of direct current electricity from an overhead catenary wire arced suddenly and without warning into Jeffrey's body. Jeffrey was in front of Brett at the time and went down upon being hit by the electricity.

49. Upon seeing Jeffrey fall, Brett went immediately to Jeffrey's aid and was himself then also severely shocked when he touched Jeffrey.

50. As a result of the electrical shock that he received, Jeffrey sustained second and third degree burns over 75% of his body, from his head to his feet, including his left ear, neck, shoulders, arms, left hand, back, and groin.

51. Brett sustained burns over 10% to 19% of his body, including his face, forearms, wrists, hands and left leg.

52. If a sign warning of the danger of electrical arcing had been posted next to the ladder that Jeffrey and Brett climbed, neither boy would have climbed that ladder and neither would have suffered the horrible injuries that they have suffered, the effects of which will last for the rest of their lives.

## COUNT I

53. Plaintiffs incorporate all preceding paragraphs as though set forth here in full.

54. Defendants knew or had reason to know:

    a. that if minors saw a parked, stationary, unrestricted railcar with ladders leading to the top, they might want to climb it;

    b. that if those minors climbed the ladders, they would face an unreasonable risk of death or serious bodily injury from the catenary wires and their arcing danger;

    c. that those minors would not know the danger of arcing that the catenary lines presented; and

    d. that there was an easy and inexpensive way, through permanent colored pictorial signs next to the ladders, to warn those minors of such danger.

55. Given that Defendants created the danger to those minors, and had knowledge that the minors did not have, Defendants had a duty to warn those minors, through the posting of a sign or signs next to the ladders on the railroad cars.

56. The burden to Defendants of posting such a sign or signs would be slight as compared with the risk of electrical shock or electrocution.

57. In neglecting to post warnings of the risks of catenary wires at the location where Jeffrey Klein and Brett Birdwell were shocked, Defendants failed to exercise reasonable care to eliminate the danger or otherwise protect persons such as Jeffrey Klein and Brett Birdwell.

58. The actions and omissions of Defendants were a proximate cause of Jeffrey Klein's and Brett Birdwell's injuries.

59. The actions and omissions of Defendants were not only negligent, but also willful, wanton, reckless, and outrageous.

WHEREFORE, Jeffrey Klein and Brett Birdwell request compensatory damages in excess of $150,000 from Defendants Amtrak and NSC, jointly and severally, plus punitive damages from each defendant in an appropriate amount.

                                                           _____

JOSEPH F. RODA
Atty. I.D. No. 20615

JENNIFER S. SNYDER
Atty. I.D. No. 89495

RODA & NAST, P.C.
801 Estelle Drive
Lancaster, PA  17601
717-892-3000

Attorneys for Plaintiffs

DATED:  February 27, 2004