## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY KLEIN, | : | CIVIL ACTION |
| BRETT BIRDWELL, | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | NO. 04-955 |
| | : | |
| NATIONAL RAILROAD | : | |
| PASSENGER CORP., | : | |
| NORFOLK SOUTHERN CORP., | : | |
| Defendants | : | |

### MEMORANDUM

STENGEL, J.                                                      March 31, 2006

Jeffrey Klein and Brett Birdwell suffered burns when they came in contact with

National Railroad Passenger Corporation's ("Amtrak's") catenary power lines on a tail

track located in Lancaster, Pennsylvania.  They had climbed to the top of a Norfolk

Southern Corporation ("Norfolk Southern") freight car parked on the track which put

them in proximity to the wires.  The defendants filed motions for summary judgment.

The facts of this case, as related in the pleadings, are as follows:

### I.     BACKGROUND

1)     On August 10, 2002, Jeffrey Klein and Brett Birdwell were seventeen (17)

years old.  The two were in Lancaster, Pennsylvania visiting Klein's mother and step-

father.

2)     The two had been riding their skateboards in various parking lots when they

decided to go to New Holland Avenue and proceed South toward Ross Street.  At New

Holland and Ross Street, they entered the Kay Ames Dog Training School's parking lot. Amtrak's right of way, including tracks, catenary poles, catenary wires and land, was located behind Kay Ames. The right of way was on top of an embankment which was approximately 30 feet in length.

3)      After skateboarding around the Kay Ames parking lot, the two plaintiffs sat on the curb of the Kay Ames' concrete sidewalk. While sitting on the curb, the two plaintiffs noticed freight cars located on a portion of the railroad, owned and possessed by Amtrak, known as the "tail track." Shortly thereafter, Birdwell suggested that they climb on a parked freight car. According to Birdwell, they wanted to see the lights of Lancaster City.

4)      The two plaintiffs walked up the 30' embankment to the tail track and then climbed the ladder located at the end of the Norfolk Southern freight car parked on the track. The two plaintiffs climbed the ladder 15' 6" above the track. They were located in the vicinity of mile post 66.9. Amtrak had placed "no trespassing" signs along the right of way and specifically on the tail track within the area of milepost 66.9. The two plaintiffs proceeded to the right of way from the south.

5)      Neither Birdwell nor Klein were invited onto the property by anyone. Neither Birdwell nor Klein ever saw any railroad employees while on the tail track.

6)      The area at mile post 66.9 was illuminated by the lights of the Kay Ames Dog School, an overhead street light on the west side of New Holland Avenue, the lights

of the gas station on the south west corner of New Holland Avenue and Ross Street, the lights from the Turkey Hill store on the east side of New Holland Avenue, and a billboard advertisement on the north west corner of New Holland Avenue.  This lighting was sufficient for Birdwell to see that there was a ladder to climb up and to see the grating on top of the Norfolk Southern freight car.

7)      The Norfolk Southern freight car involved in this accident, model FLRX5502, is known as a hopper car.  It is often used to hold grain and has raised hatches on its roof.  FLRX5502 is approximately 67' in length and 15'6" in height from rail to hatch cover.  The catenary wires were 6'4" above the roof of FLRX5502 and 6'1" above the hatch covers.

8)      Both Birdwell and Klein knew that they had climbed onto property that did not belong to them and that neither was invited to do so.

9)      Klein climbed the ladder first and Birdwell followed close behind. Birdwell recalls seeing the catenary wires overhead after he reached the top of the FLRX5502.  The lighting in the area allowed Birdwell to see approximately four freight cars to the east and the west along the railroad right of way.

10)     Birdwell and Klein both knew that the catenary wire or wires like the ones noticed by Birdwell were dangerous.  Birdwell and Klein both knew that electricity could kill.  Birdwell knew that wires like the ones above FLRX5502 carried electricity and he

3

would never voluntarily touch such wires if he knew they were live.  Neither plaintiff, however, realized the wires were energized until after the accident.

11)     The two plaintiffs were on top of the hopper for a few minutes prior to the accident, admiring the view.  They looked at the lights of Lancaster City and walked the length of the car.

12)     The two plaintiffs were injured when Klein, then 5'8" tall, stood on a hopper hatch lid and contacted, or came within 2" of, the catenary wire at around 10:00 p.m. on August 10, 2002.

13)     Catenary wires, the wires that power electrified trains, carry approximately 12,000 volts of electricity.

13)     On August 9, 2002, at 6:10 a.m., Norfolk Southern Train H27 arrived at Cork Tower located at Mile Post 68.1 on Amtrak's right of way in Lancaster.  Norfolk Southern's trainmaster, as required, asked for and received permission from an Amtrak Block Operator to enter Amtrak's tail track and to temporarily leave 29 freight railcars there.  Model FLRX5502 was one of the freight railcars parked on the tail track.

14)     The tail track is a short track that runs parallel to Amtrak's main line.  The tail track is used to run trains as well as to store railcars.

15)     In the three (3) years preceding this accident, there were multiple incidents involving trespassers on Amtrak's tracks within a mile in either direction of mile post 66.9.

16)     Prior to this incident, a four-year resident of an apartment overlooking the

site of the accident had never seen young men on the tracks or on the railcars.  A number

of Lancaster area emergency personnel had never seen juveniles trespassing at the site of

this accident.

17)     As a result of the accident, Klein sustained third degree burns to 75% of his

body, from his head to his feet, including to his shoulders, neck, back, groin, hips and left

hand, and his left ear was completely burned off.  Klein was hospitalized at Temple

University Hospital from August 10, 2002 to October 25, 2002.  He has sustained

substantial scarring as a result of his burns.

18)     As a result of the accident, Brett Birdwell sustained burns over 10% to 19%

of his body, including third degree burns to his forearms, and second degree burns to his

face, head, wrists, hands and left leg.  He was hospitalized at Crozer-Chester Medical

Center from August 10, 2002 to August 23, 2002.

19)     Amtrak goes to great lengths to teach and warn its employees and third-

party contractors about the dangers of electrocution and shock associated with catenary

wires.

## II.     STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with affidavits, if any, show that there is

no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it might affect the outcome of the case under governing law.  Id.

In this case, the defendants bear the initial responsibility of informing the court of the basis for their motions and identifying those portions of the record that they believe demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  While plaintiffs bear the burden of proof on a particular issue at trial, the defendants' initial Celotex burden can be met simply by pointing out to the court that there is an absence of evidence to support the plaintiffs' case.  Id. at 325.  After the defendants have met their initial burden, the plaintiffs' response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e).  That is, summary judgment is appropriate if the plaintiffs fail to rebut the defendants' assertions by making a factual showing sufficient to establish the existence of an element essential to their case, and on which they will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. at 322.

Under Rule 56, the court must view the evidence presented on the motion in the light most favorable to the plaintiffs.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 255. If the plaintiffs have exceeded the mere scintilla of evidence threshold and have offered a genuine issue of material fact, then the court cannot credit the defendants' version of

6

events against the plaintiffs, even if the quantity of the defendants' evidence far

outweighs that of the plaintiffs'.  Big Apple BMW, Inc. v. BMW of North America, Inc.,

974 F.2d 1358, 1363 (3d Cir. 1992).

## III.    DISCUSSION

This case concerns the rights and duties of those in possession of land in the

Commonwealth of Pennsylvania.  The duties of a possessor of property for conditions on

its property are determined by the status of the entrant as invitee, licensee or trespasser.

In this case, it appears the plaintiffs were trespassers: they entered and remained upon the

land of another without a privilege to do so created by the possessor.

Under Pennsylvania law, the duty owed by a possessor of land to a trespasser is to

refrain from willfully and wantonly injuring the trespasser.  Rossino v. Kovacs, 718 A.2d

755, 756 (Pa. 1998).[1]  There is no duty to anticipate the presence of trespassers or to

prepare property for their safety.  The plaintiffs, however, argue that § 339 of the

Restatement (Second) of Torts provides an applicable exception to the general liability

standard for trespassers and applies in this case.  Namely, § 339, or the "attractive

nuisance" section, provides for possessor liability in a case of trespassing children.

Conversely, the defendants, through their motions for summary judgment, argue that there

is no genuine issue of material fact allowing the plaintiffs to recover.  Specifically the

---

[1]Defendant Norfolk Southern also argues that since it did not own the land upon which the plaintiffs
trespassed, it did not owe the plaintiffs any duty.

defendants argue that § 339 does not and can not apply to this case as a matter of law, that the plaintiffs are unable to show the defendants' conduct rose to the level of "willful and wanton," and that the plaintiffs' own actions qualify as "willful and wanton" and provide a complete bar to their requested recovery.[2]

**A.      Amtrak's Actions as Willful or Wanton Conduct**

Amtrak may be held liable if their conduct was "willful or wanton." Heller v. Consolidated Rail Corp., 576 F. Supp. 6, 8 (E.D. Pa. 1982). In this case, the plaintiffs assert that Amtrak's conduct was wanton.

"Wanton misconduct" means:

> the actor has intentionally done an act of an unreasonable character, in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow. It usually is accompanied by a conscious indifference to the consequences.

Evans v. Philadelphia Transportation Co., 212 A.2d 440, 443 (Pa. 1964) (quoting Prosser, Torts § 33 at 151 (2d ed. 1955)).

In order to be liable for wanton misconduct, a defendant need not have "*actual* prior knowledge of the injured persons' peril." Evans, 212 A.2d at 443-44 (emphasis in original); Heller, 576 F. Supp. at 8 (defendant need not be aware of a trespasser's actual position). Thus, Amtrak did not have to know, before plaintiffs were injured, that Jeffrey

---

[2] See Lewis v. Miller, 543 A.2d 590, 592-93 (Pa. Super. 1988) (finding plaintiff's willful and wanton conduct was a complete bar to recovery).

Klein and Brett Birdwell were in the parking lot of the dog school on the night of August 10, 2002.  It is enough if Amtrak should have realized that putting the laddered Norfolk car under the energized catenary line, in a residential area, was an unreasonable act in disregard of a known risk *that would likely put someone in grave peril*.  Applicable case law on wanton misconduct is illuminating as to what qualifies as conduct that makes it "highly probable that harm will follow."

In <u>Evans</u>, the operator of a subway train was rounding a curve when he saw "an object" lying in between the rails adjacent to the passenger platform ahead of him at a point when the train could have been stopped before striking "the object."  <u>Evans</u>, 212 A. 2d at 443.  The object lying in between the rails turned out to be a person.  <u>Id.</u>  The operator testified that it was too late to stop the train to avoid the accident by the time he realized there was a man lying on the tracks.  <u>Id.</u>  The Pennsylvania Supreme Court held that there was enough evidence to establish that the operator was in possession of sufficient facts to put a reasonable man on notice of an impending peril to the particular victim and that it was for the jury to say whether having such knowledge, he acted with reckless disregard for the safety of the plaintiff.  <u>Id.</u> at 445.

The <u>Evans</u> case is an example of conscious indifference to a risk on the part of the subway conductor and his choice not to stop the train that made harm to the victim certain.  In that case, the court explicitly found that a jury may find wanton or reckless conduct where the actor did an intentional act knowing, or having reason to know, of

facts which would lead a reasonable person to conclude that the actor's conduct created a high probability of unreasonable risk to another.  Id.

In this case, the defendants intentionally parked the freight cars, intending to leave them for several nights, under energized power lines.  Furthermore, Amtrak knows of the danger posed by humans coming in contact with catenary wires and trains their employees accordingly.  Amtrak also knows that the area within a mile in each direction of the site of the accident had been trespassed sixty-nine (69) times during the three years before the accident.  Of these trespasses, at least thirty-three (33) involved juveniles, with at least seventy-eight (78) juveniles mentioned.  Although the defendants did not have a duty to anticipate the plaintiffs trespassing onto the Amtrak right of way and climbing to the top of the train,[3] there is a genuine issue of material fact whether the act of parking the freight cars on that particular tail track would lead a reasonable person to conclude that a high probability of harm existed.

Conversely, in Heller the Court granted the defendants' motion for summary judgment after a trespassing university student was injured after climbing into and then onto a boxcar while a train was temporarily stopped adjacent to the Villanova University campus.  Heller, 576 F. Supp. at 9.  The plaintiff ascended the standing boxcar's ladder and then was severely injured when he contacted the overhead catenary wire.  Id.  The train's crew was in the lead engine, thirty-seven (37) cars ahead of the box car on which

---

[3]See Tedesco v. Reading Co., 24 A. 2d 105 (Pa. Super. 1942) (there is no duty to anticipate trespassers).

10

the plaintiff was injured.  Id.  No member of the train crew saw or could have seen the plaintiff climb on top of the box car.  Id. at 10.  The Court stated "the crucial point in determining wantonness is whether or not the actor had sufficient warning of the possibility of the victim's peril.  Actual knowledge constitutes only one manner of appraisal."  Id.  The Court held that there was no wanton misconduct by the defendant railroad because there was no evidence that it had reason to know of plaintiff's imminent peril.  Id.

In this case, the evidence presented by the plaintiffs makes it clear that catenary power lines present a grave danger to anyone who comes near them, that the parked and laddered freight car made it possible for individuals to come near the catenary line, and that the public in general is not likely to know about the dangers involved with the catenary lines.  I find this evidence is sufficient to pose a genuine issue of material fact regarding whether Amtrak's actions were wanton in choosing to leave the freight cars under the energized lines for an extended period of time.  A reasonable jury may conclude that Amtrak had sufficient warning of the possibility of the plaintiffs' peril given the frequency of trespassers reported in the area, and the prolonged time the cars sat on the tracks.  I will deny Amtrak's motion for summary judgment on this issue.

**B.      § 339 of the Restatement (Second) of Torts**

Section 339 of the Restatement (Second) of Torts is an exception to the general rule that no duty is owed to trespassers but to refrain from willful and wanton misconduct.

According to the defendants, there is no genuine issue of material fact that would allow the plaintiffs to hold them to the liability standard set out in § 339 of the Restatement. The defendants argue that the plaintiffs are unable to prove three of the section's five subparts as a matter of law.

Restatement (Second) of Torts § 339 provides:

> A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if
> (a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and
> (b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and
> (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and
> (d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and
> (e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

Restatement (Second) of Torts § 339 (1965).

Section 339 of the Restatement (Second) of Torts has been adopted by the Supreme Court of Pennsylvania. Dugan v. Pa. R.&R. Co., 387 Pa. 25, 31 (Pa. 1956). In order to establish a cognizable claim under Section 339, a plaintiff must satisfy each of the section's five specific conditions. Scarborough by Scarborough v. Lewis, 518 A.2d 563, 572-573 (Pa. Super. 1986) rev'd in part on other grounds, 565 A.2d 122 (1989).

In this case, the laddered freight car was an artificial condition upon the land that allowed the 21' high catenary wires to become dangerous.  Viewing all facts in favor of the plaintiff, I find the freight car qualifies as an artificial and dangerous condition.  The next question is whether section 339 can apply to two seventeen year-old males.

Comment (c) of the second restatement provides appropriate guidance as to who qualifies as children under § 339.  Comment (c) states:

> c.  Children.  In the great majority of the cases in which the rule here stated has been applied, the plaintiff has been a child of not more than twelve years of age.  The earliest decisions as to the turntables all involved children of the age of mischief between six and twelve.  The later cases, however, have included a substantial number in which recovery has been permitted, under the rule stated, where the child is of high school age, ranging in a few instances as high as sixteen or seventeen years.  The explanation no doubt lies in the fact that in our present hazardous civilization some types of dangers have become common, which an immature adolescent may reasonably not appreciate, although an adult may be expected to do so.  The rule stated in this Section is not limited to "young" children, or to those "of tender years," so long as the child is still too young to appreciate the danger, as stated in Clause (c).

> A few courts have attempted to state arbitrary age limits, setting a maximum age of fourteen for the possible application of the rule.  This usually has been taken over from the rule, in these states, as to the presumed capacity of children over the age of fourteen for contributory negligence, which has in turn been derived from the rule of the criminal law as to their presumed capacity for crime.  The great majority of the courts have rejected any such fixed age limit, and have held that there is no definite age beyond which the rule here stated does not apply.  As the age of the child increases, conditions become fewer for which there can be

> recovery under this rule, until at some indeterminate point,
> probably beyond the age of sixteen, there are no longer any
> such conditions.

Comment (c) to Restatement (Second) of Torts § 339 (1965).

In this case, the plaintiffs were minors at the time of the accident.  Although a plausible argument can be made as to why the court should set an arbitrary age limit on the applicability of § 339 given Pennsylvania's negligence standard,[4] no Pennsylvania court prior to this proceeding has so acted.  I find that it would be an inappropriate reading of the case law, and an unprecedented legal jump not warranted at the summary judgment stage of a case, to bar plaintiffs' use of § 339 as a matter of law.  The plaintiffs have shown they were minors, or children in the eyes of the law, at the time of the trespass, and as such, the defendants have failed to meet their burden of proving that § 339 can not apply.  A genuine issue of material fact exists as to whether the plaintiffs are children within the meaning of § 339.

### C.    Applying § 339 of the Restatement (Second) of Torts

_____Whereas the previous subsection analyzed whether the plaintiffs are precluded from being classified as children under § 339 as a matter of law, this subsection will analyze whether, viewing all evidence in the light most favorable to the plaintiffs, the plaintiffs are able to establish each of § 339 five elements.  Because the defendants do not

---

[4]Under Pennsylvania law, minors under the age of seven years are presumptively incapable of negligence; minors between the ages of seven and fourteen are presumed incapable of negligence, but such a presumption is rebuttable and grows weaker with each year until the fourteenth year is reached; and minors over the age of fourteen are presumptively capable of negligence. Dunn v. Teti, 421 A.2d 782, 784 (Pa. Super. 1980).

14

contest whether the plaintiffs can establish sections (b) and (d) of § 339, I will focus my discussion on the three remaining elements.

        1)     Likelihood of Children to Trespass at the Scene of the Accident

Under section 339(a), the plaintiffs must prove that the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass.  Comment (g) to Section 339 states:

> "Has reason to know."  In order for the rule stated in this Section to apply, the possessor of the land must know or have reason to know that children are likely to trespass on the land.  "Has reason to know" is defined in § 12 to mean that he has information from which a person of reasonable intelligence, or of the superior intelligence of the actor, would infer that the fact in question exists, or would govern his conduct upon the assumption that it does exist.  It is not enough that the possessor "should know" of trespasses (see § 12), in the sense that a reasonable man in his position would investigate to discover the fact.  The possessor is under no duty to make any investigation or inquiry as to whether children are trespassing, or are likely to trespass, until he is notified, or otherwise receives information, which would lead a reasonable man to that conclusion.

Comment (g) to The Restatement (Second) of Torts § 339 (1965).

The plaintiffs argue the graffiti located around mile post 66.9 put Amtrak on notice that children had trespassed in that general area before.  See Estate of Zimmerman v. SEPTA, 17 F. Supp. 2d 372, 384 (E.D. Pa. 1998) (finding evidence of graffiti was enough to put defendant on notice of trespassers for purposes of summary judgment).  The plaintiffs have also shown sixty-nine (69) separate reports of trespasser incidents within a

mile of the accident site during the three years prior to the accident.  The defendants

contend, however, that an individual who lives in an apartment overlooking the site of the

accident, Claude Heiney, and numerous members of various Lancaster area emergency

units never witnessed or were aware of children trespassing near the accident site.

Furthermore, Amtrak police reports show instances of juveniles trespassing at different

times and on different portions of the Amtrak right of way, but none of these reported

instances occurred at the exact site of the accident.  For purposes of this summary

judgment motion, I find the plaintiffs have met their scintilla of evidence threshold and

have shown, through the graffiti and Amtrak's police reports regarding children

trespassers, a genuine issue of material fact whether Amtrak had reason to know that

children trespassers have frequented the area of the accident.

   2) Plaintiffs' Failure to Discover the Condition or Fail to Appreciate
     the Risks

  Assuming the plaintiffs may be classified as children, subsection (c) asks whether

they, as children, were able to appreciate the risks in intermeddling with the artificial

condition.  The plaintiffs argue it is a subjective test that should be left for the jury

whether the two plaintiffs appreciated the particular hazard involved in this case.  See

Dugan, 127 A.2d at 346 (finding it was possibly an issue for the jury whether an eight and

a half year-old and his eleven year-old brother appreciated the risks of getting close to a

railroad's catenary structure).  Furthermore, the plaintiffs claim the risks posed by the

defendants' catenary wires are not obvious and that the defendants continually have to

train their employees about the dangers associated with arcing.[5]  Assuming the plaintiffs

evidence is true and the risk of arcing of catenary power lines is not fully appreciated by

the general public, the plaintiffs still must be able to show that because of their youth,

they failed to appreciate the dangerous condition.

The purpose of section 339 (c) is to impose a duty upon a landowner to protect

children from dangers which they are unlikely to appreciate and not to impose a duty to

protect children resulting from their own recklessness in the case of a known danger.

McHugh v. Reading Co., 30 A.2d 122, 123 (Pa. 1943).  Under the law of this

Commonwealth, a child is held to that measure of care that other children of like age,

experience, capacity and development would ordinarily exercise under similar

circumstances.  Kuhns v. Brugger, 135 A.2d 395, 401-02 (Pa. 1957).  These are objective

standards, not subjective ones.  Likewise, an objective standard may be applied under

Section 339.

Comment (i) to section 339 states:

> When risk such that children can be expected to
> appreciate it.  The duty which the rule stated in this Section
> imposes upon the possessor of land is based upon the
> well-known tendency of children to trespass upon the land of
> others and the necessity of protecting them, even though
> trespassers, from their childish lack of attention and judgment.
> The duty of the possessor, therefore, is only to exercise
> reasonable care to keep the part of the land upon which he
> should recognize the likelihood of children's trespassing free
> from those conditions which, though observable by adults, are

---

[5]Arcing occurs when electricity from one source "jumps" to another.

> likely not to be observed by children, or which contain the
> risks the full extent of which an adult would realize but which
> are beyond the imperfect realization of children.  It does not
> extend to those conditions the existence of which is obvious
> even to children and the risk of which should be fully realized
> by them.  This limitation of the possessor's liability to
> conditions dangerous to children, because of their inability to
> appreciate their surroundings or to realize the risk involved,
> frees the possessor of land from the liability to which he
> would otherwise be subjected by maintaining on the land the
> normal, necessary and usual implements which are essential
> to its normal use, but which reckless children can use to their
> harm in a spirit of bravado or to gratify some other childish
> desire and with as full a perception of the risks which they are
> running as though they were adults.

Restatement (Second) of Torts § 339 Comment (i) (1965).

In this case, the defendants have shown Birdwell saw the power lines above the

train.  Both plaintiffs, as seventeen year-olds, knew the dangers associated with power

lines and wires.  Both plaintiffs were old enough to realize that the power lines above the

train were dangerous and knew to not come in contact with them.

On the other hand, although both plaintiffs knew the risks involved in

intermeddling with electricity, neither knew the risk associated with arcing, nor did they

realize the electricity connected to the freight train remained on.  The plaintiffs have

presented some evidence that seventeen year-old males generally do not have fully mature

brains, and as such can not fully control their impulses or appreciate some risks.  Other

than a few generalized medical reports, however, the plaintiffs have not presented any

evidence that they were unable to appreciate the risks of electrocution associated with

climbing to the top of a freight car.  Further, there is no evidence to suggest that Klein was not within two inches of the catenary wires when he was electrocuted.  Viewing all of the evidence in the light most favorable to the plaintiffs, I find that it is for a jury to decide whether the plaintiffs failed to appreciate the risks because of their youth.  The combination of the plaintiffs medical reports regarding seventeen year-olds generally, and that the plaintiffs failed to realize the lines were energized meets the plaintiffs mere scintilla threshold.  A genuine issue of material fact exists in this case as to whether the plaintiffs failed, because of their youth to recognize the risk of power lines directly overhead a train or whether such a danger is obvious to seventeen year-olds.[6]

### 3)   Amtrak's Failure to Exercise Reasonable Care to Eliminate the Danger

The defendants argue that their actions were reasonable because under Pennsylvania law, they do not have a duty to fence in their main lines,[7] and mandating electrical warning signs be permanently stenciled on all train cars that travel under electrified lines is preempted by 49 C.F.R. § 215.301 of the Rail Safety Act of 1970

---

[6] Although several courts from other jurisdictions have imputed a common knowledge status to the dangerousness of electricity, it is possible a reasonable jury may conclude that the plaintiffs failed to appreciate the risks involved in this case because of their youth.  See Levonas v. Acme Paper Board Company, 40 A.2d 43, 45-46 (Md. 1944) (court found it is a matter of common knowledge that any line carrying electric current is dangerous to a more of less degree); Hamilton v. Southern Nevada Power Company, 273 P.2d 760 (Nev. 1954) (court affirmed dismissal of a sixteen year-old's case where he contacted electrical wires while raising a metal pipe); Peterson v. Minnesota Power and Light Co., 288 N.W. 588, 589 (Minn. 1939) (court found the danger of electrical energy is a matter of common knowledge); and Texas Utilities Electric Company v. Timmons, 947 S.W. 2d 191 (Tex. 1997) (court denied recovery to a fourteen year-old boy who was electrocuted after climbing a utility wire after the court found such a plaintiff is charged with knowledge that electric wires are ordinarily dangerous).

[7] See Scarborough, 518 A.2d 563 (Pa. Super. 1986).

(FRSA).  According to the plaintiffs however, the defendants may still have failed to exercise reasonable care.  For example, the plaintiffs suggest that the defendants could have parked the trains at another location, de-energized the wires over the tail track, or placed warning signs either adjacent to, or temporarily on, the parked cars.  Viewing the evidence in the light most favorable to the plaintiffs, I find there is a genuine issue of material fact regarding whether the defendants failed to exercise reasonable care to prevent the accident.

### D.    Defendants' Contentions that Plaintiffs' Actions Were Willful and Wanton

Even if the defendants' misconduct was willful and wanton, the plaintiffs may be barred from recovering if their conduct was also willful and wanton.  Under Pennsylvania law, a party cannot use comparative negligence as a defense to a finding of willful and wanton misconduct on its part.  Lewis v. Miller, 543 A.2d 590 (Pa. Super. 1988).  There is no statutory law similar to the Comparative Negligence Act which would permit a jury to compare relative degrees of wantonness on the part of each party.  Id. at 592-93. Therefore, a finding of willful and wanton misconduct on the part of a plaintiff is a complete bar to recovery.  Id.

In order for the plaintiffs' actions to be willful and wanton, they would have acted in disregard of a risk known to them or so obvious as they should have known, and their injuries must have been a highly probable result of their actions.  Evans, 212 A.2d at 443. Similar cases have discussed this issue.

20

In <u>Lewis v. Miller</u>,[8] two young men were engaged in a high-speed drag race on a public street while both were legally intoxicated.  One of the racers crashed and died. <u>Lewis</u>, 543 A.2d at 591.  The decedent's estate sued the other racer for damages.  <u>Id.</u>  The Pennsylvania Superior Court held that the lower court was correct in not allowing the case to be submitted to the jury because both men were engaged in wanton misconduct. <u>Id.</u> at 592.  The court found the driver's activities showed a conscious indifference for his own safety and for public safety.  <u>Id.</u>

In <u>Hansen v. PECO Energy Co.</u>, 1999 U.S. Dist. LEXIS 13388 (E.D. Pa. Aug. 25, 1999) (Kelly, J.) affirmed 229 F.3d 1138 (3d Cir. 2000), this Court denied recovery to a plaintiff because such recovery was barred by his own wanton conduct.  In <u>Hansen</u>, a twenty year-old trespasser was injured when he climbed a catenary structure to wave to friends and contacted its wires.  The court found the plaintiff's conduct wanton because he had a choice and should not have climbed the catenary structure.

In this case, the plaintiffs attempt to distinguish themselves from <u>Hansen</u> and <u>Lewis</u> by arguing that the actors in those cases were intoxicated adults.  Furthermore, the plaintiffs argue that, similar to their arguments under § 339(c), they had no way of understanding the dangers posed by the catenary wires above the train.  Based upon the court's standard for establishing willful and wanton conduct, the plaintiffs have made enough of a showing to create a genuine issue of material fact regarding whether the

_____

[8]543 A.2d 590 (Pa. Super. 1988).

plaintiffs' own misconduct bars their recovery.  I will deny the defendants' motion for summary judgment as to this count.

### E.     Punitive Damages

The law for recovery of punitive damages in Pennsylvania is well settled.  In Feld v. Merriam, 485 A.2d 742 (Pa. 1984), the Pennsylvania Court adopted Section 908(2), which allows for punitive damages only for conduct that is "outrageous, because of the defendant's evil motive or his reckless indifference to others."  Section 908(2) of the Restatement (Second) Torts.  In order to obtain punitive damages, the plaintiffs must prove that the defendants' conduct was "outrageous" because it was done with an "evil motive" or that it was "outrageous" because it was done with a "reckless indifference to the interests of others."  Furthermore, punitive damages must be based on conduct which is 'malicious,' 'wanton,' 'reckless,' 'willful,' or 'oppressive' . . ."  Feld, 485 A.2d at 395 (citing Chambers v. Montgomery, 192 A.2d 355, 358 (Pa. 1963); Hughes v. Babcock, 37 A.2d 551 (Pa. 1944).  I find the plaintiffs have raised a genuine issue of material fact regarding whether the defendants' allegedly wanton conduct qualifies as the type of outrageous conduct necessary for punitive damages.

## V.   CONCLUSION

Based upon the reasoning laid out above, I will deny the defendant Amtrak's motion for summary judgment.  Specifically I find there are genuine issues of material fact as to Amtrak's allegedly wanton conduct, the applicability of § 339 of the

Restatement (Second) of Torts, and the plaintiffs' allegedly willful and wanton conduct.

Amtrak's motion to preclude punitive damages shall be denied.  An appropriate order

follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JEFFREY KLEIN,** | : | **CIVIL ACTION** |
| **BRETT BIRDWELL,** | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | **NO. 04-955** |
| | : | |
| **NATIONAL RAILROAD** | : | |
| **PASSENGER CORP.,** | : | |
| **NORFOLK SOUTHERN CORP.,** | : | |
| **Defendants** | : | |

### <u>ORDER</u>

**AND NOW**, this 31st day of March, 2006, upon consideration of the defendants'

Motions for Summary Judgment and the plaintiffs' responses thereto, it is hereby **ORDERED**

that:

1)      Defendant National Railroad Passenger Corp.'s Motion for Summary Judgment

(Docket # 36) is **DENIED**.

2)      Defendants National Railroad Passenger Corp. and Norfolk Southern's Motion to

Exceed Twenty-Five Page Limit for Briefs and Memorandum (Docket # 39) is **GRANTED**.

3)      Defendant National Railroad Passenger Corp.'s Motion for Summary Judgment

(Docket # 40) is **DENIED as MOOT**.

4)      Defendant Norfolk Southern's Motion for Summary Judgment (Docket # 41) is

**DENIED as MOOT**.

5)      Defendants National Railroad Passenger Corp. and Norfolk Southern's Motion to

File a Surreply (Docket # 48) is **GRANTED**.

6)      Plaintiffs' Motion to File a Supplemental Memorandum (Docket # 56) is

**GRANTED**.  Defendant Norfolk Southern shall have two (2) weeks from the date of this order

to respond to the plaintiffs' Motion and Memorandum regarding the applicability of § 386 of the

Restatement (Second) of Torts.  The court will refrain from ruling upon Norfolk Southern's

Motion for Summary Judgment until after reviewing its response to the plaintiffs' Motion.

BY THE COURT:


 s/ Legrome Davis for Stengel, J._____
LAWRENCE F. STENGEL, J.